# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

EDWARD JAMES MOORE,                  :

    Plaintiff,                       :

vs.                                  :          CA 19-0294-TFM-MU

STEVE MARSHALL, ALABAMA              :
ATTORNEY GENERAL, et al.,
                                     :
    Defendants.

## **REPORT AND RECOMMENDATION**

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on Plaintiff's Complaint (Doc. 1), the motion to dismiss filed by Defendants DriveTime Car Sales Company, LLC ("DriveTime"), Bridgecrest Acceptance Corporation ("Bridgecrest"), and Raymond C. Fidel (Doc. 7), the motion to dismiss (or, in the alternative, motion for a more definite statement) filed by Defendants Kim Ballard and the Dallas County Commission (Doc. 17), the motion to dismiss filed by Defendants the Alabama Law Enforcement Agency ("ALEA") and Alabama Attorney General Steve Marshall (Doc. 24), the Plaintiff's responses in opposition to each motion to dismiss (*see* Docs. 19, 26 & 28), and the separate replies of the "DriveTime" Defendants (Doc. 23) and the "Dallas County Commission" Defendants (Doc. 27). Based on the contents of these and all other relevant pleadings in this matter, the Magistrate Judge **RECOMMENDS** that Plaintiff's complaint be **DISMISSED**, both with and without prejudice, for the reasons set forth below.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Edward James Moore's Complaint against the movants is centered upon his dissatisfaction with a used car he purchased off a car lot in Maryland in early May of 2017, his dissatisfaction with certain entities/individuals when he attempted to register this vehicle with the State of Alabama upon his return to his State of birth in 2018, and his dissatisfaction with the temporary suspension of his newly-acquired Alabama Driver's License in 2018. (*See generally* Doc. 1).

From what the undersigned can discern from Moore's 62-page, 138-paragraph, handwritten complaint (with a "forward" of some 11 additional pages), on May 1, 2017, Plaintiff, who was then a resident of Virginia (*see* Doc. 1, at ¶ 8), went online to DriveTime.com and was approved for the purchase of a used automobile (*see id.* at ¶ 67). Moore then traveled to a DriveTime car dealership lot in Temple Hill, Maryland, on May 5, 2017, and purchased a 2011 Subaru Legacy. (*Compare id.* at ¶ 8 *with* ¶¶ 68-74 & 80). And while the sales price of the car was just a bit over $12,000, after adding various fees, charges, taxes, and protection plans, the total was $18,244.10, with a balance of $17,644.10 to be financed by Plaintiff after subtracting the $600.00 down-payment. (*See id.* at §§ 75-76). Moore agreed to an interest rate of 24.870%, which "upped" his financed total to over $32,000 (*id.* at ¶ 77), an amount he agreed to repay over the course of sixty-six (66) months, beginning June 5, 2017, at $489.89 per month (*id.* at ¶ 78). According to Moore, he was given no papers to read and sign; instead, everything he signed was generated electronically and the salesman merely paraphrased the information contained in the documents (with limited explanation) he was signing electronically. (*See id.* at ¶ 74).

Moore soon began experiencing problems with his used vehicle. (*See id.* at ¶ 81). His vehicle did not start on May 22, 2017, prompting Moore to call AAA for roadside assistance. (*See id.* at ¶¶ 81-82). And while the AAA technician could not pinpoint the exact reason the car would not start (*id.* at ¶ 83), the car ultimately started that same day based on Plaintiff's further allegation that he drove the Subaru Legacy to the DriveTime dealership in Temple Hill, Maryland to complain that the car was not starting properly (*id.* at ¶ 84). When Plaintiff arrived at the dealership, he was informed that there was no service department at that location (*id.* at ¶ 85); however, a dealership employee gave Moore a business card with the phone number to SilverRock Gap Coverage (*id.* at ¶ 86) and, upon making a call to SilverRock, he learned that the SilverRock service and repair setup consisted of a network of local, private automobile repair shops and that while there was no guarantee that all repair costs would be covered, there was the guarantee that there would always be a diagnostic fee of $75.00 (*id.* at ¶ 87). There is no indication that Moore then took his car to any of the SilverRock local repair shops for examination; instead, Plaintiff engaged in "'extreme scrutiny'" of the vehicle and determined that as long as the motion GPS system and the car's lost or stolen computer app were engaged, the car would not start properly. (*See id.* at ¶ 88). Therefore, on August 20, 2017, Moore disabled the GPS system and the computer app (*id.*); since then, the "car has crank up as if it were a brand new automobile[.]" (*Id.* at ¶ 89).

Moore claims that in mid-November of 2017, the car's regular low beam headlights became non-operational, requiring him to drive at night using his high

beams. (*Id.* at ¶ 90).[1] Plaintiff claims the headlight problem persists to date (*id.* at ¶ 92), despite A-Tech Automotive Service in Selma, Alabama convincing him to purchase two new headlight bulbs on January 12, 2019 (*see id.* at ¶¶ 92-94).

In June of 2018, Moore moved to Selma, Alabama (*id.* at ¶ 10), the city of his birth (*see id.* at ¶ 1). On July 11, 2018, Plaintiff went to the Dallas County Courthouse in Selma, Alabama and presented himself to the local DMV office. (*See id.* at ¶ 11). The Clerk who assisted Moore with respect to vehicle registration presented Plaintiff with a checklist that had to be completed so that he could register his Subaru with the State of Alabama. (*See id.* at ¶¶ 12-14). The out-of-state registration checklist given to Plaintiff reads, as follows:

> VALID ALABAMA DRIVER LICENSE OR ID
> TITLE IF THERE IS NO LIEN
> COPY OF TITLE FROM LEINHOLDER (IF THERE IS A LIEN)
> CURRENT PROOF OF INSURANCE
> VEHICLE THAT'S BEING REGISTERED
> VEHICLE OWNERS MUST BE PRESENT (OR PRESENT POA)

**(VEHICLE MUST BE INSPECTED NO EXCEPTIONS)**

(Doc. 26, Attachment 1; *compare id. with* Doc. 1, ¶¶ 12-14 & 38 (same information referenced in complaint allegations)). The registration Clerk assisting Moore added the following handwritten information on the checklist form:

> —Have lienholder fax over copy of title To Dallas Co. Commissions 334 874 2591

> —Switch Driver[']s License to Alabama

---

[1]       Plaintiff alleges in a cursory and conclusory manner that since the owner's manual states that the low and high beams emit from the "same bulb," there obviously must be some deliberate manipulation of the car's computer system because the low beams failed on both sides but there has been no impact on the high beams. (*See id.* at ¶ 91).

—Proof of insurance

—Bring vehicle

(Doc. 26, Attachment 1; *compare id. with* Doc. 1, at ¶¶ 15 & 39 (same information referenced in complaint allegations)).

After receiving the registration checklist, Moore was directed to the Driver's License section. (*See id.* at ¶ 16). Plaintiff took and passed an eye exam (*id.*) and was asked by the assisting Clerk if he had any medical conditions (*id.* at ¶ 17); Moore advised the Clerk that he was being treated for diabetes and COPD (*id.* at ¶ 18). Plaintiff received a temporary Alabama Driver's License that same day (July 11, 2018). (*Id.* at ¶ 20). A week later, on July 18, 2018, Plaintiff received a letter from the ALEA, to which was attached medical forms to be completed by a physician (*see id.* at ¶ 22), the letter reading, in relevant measure, as follows:

> WHEN YOU RENEWED/APPLIED FOR YOUR ALABAMA DRIVER'S LICENSE, YOU INDICATED YOU HAVE A MEDICAL CONDITION THAT BY ALABAMA LAW ENFORCEMENT AGENCY MEDICAL STANDARDS REQUIRES ADDITIONAL INFORMATION. WE ARE ENCLOSING FORMS YOU SHOULD HAVE YOUR DOCTOR COMPLETE AND RETURN TO THIS OFFICE. PLEASE COMPLY WITH THIS DIRECTIVE BY 09/16/2018. FAILURE TO COMPLY WILL AFFECT YOUR DRIVING PRIVILEGES. AS SOON AS WE RECEIVE ALL REQUESTED MEDICAL INFORMATION AND YOUR FILE IS EVALUATED, YOU WILL BE ADVISED FURTHER.

(*Id.* at ¶¶ 23-25). Plaintiff's driving privileges were suspended on September 16, 2018 (*id.* at ¶ 26) and while Moore does aver that he did not get an appointment with a primary care physician (Dr. Andrew Shaffer) at the Birmingham VA Medical Center until October 29, 2018 (*id.* at ¶ 27), he nowhere avers that he asked the ALEA for additional time to have a physician complete the forms (*see* Doc. 1). Nevertheless, what Moore

makes clear is that Dr. Shaffer completed the medical forms, stated his opinion that Plaintiff was capable of driving safely (*id.* at ¶ 28), and that once ALEA received the medical forms (*see id.* at ¶ 29 (plaintiff mailed the forms to the ALEA on October 31, 2018)), he (Moore) was immediately informed (on November 1, 2018) that the doctor's report was acceptable (*id.* at ¶¶ 30-31). Thus, it is clear that Plaintiff's driving privileges were restored on November 1, 2018 (*see id.*), one and one-half months after those privileges were suspended.

With respect to the registration of his vehicle, Plaintiff avers that initially on July 13, 2018, he mailed a statement to Bridgecrest advising the company of his change of address and requesting that the company fax a copy of the title to his vehicle to the number given to him by the DMV clerk. (*See* Doc. 1, at ¶¶ 41-43). However, when Plaintiff went back to the Dallas County DMV office on August 5, 2018, he was informed that no fax had been received from Bridgecrest. (*See id.* at ¶¶ 45-48). Thereafter, Plaintiff communicated with Bridgecrest by telephone on numerous occasions[2] to request that a copy of his title be faxed to the number given to him by the DMV clerk, only to be told on each occasion he returned to the DMV office that no fax had been received from Bridgecrest. (*See id.* at ¶¶ 45-59). Moore claims that on the fourth such occasion after he had communicated by Bridgecrest by phone about the title and had later been informed by the Dallas County DMV that no fax had been received from Bridgecrest, the assisting DMV clerk allowed Plaintiff to use the telephone in the DMV

---

[2] Moore specifically identifies only two such dates, August 9, 2018 and August 20, 2018. (*See id.* at ¶¶ 49-50 & 55-58).

6

office to call Bridgecrest once again and this time he was told by the Bridgecrest employee that a copy of the title would be sent to Plaintiff at his physical address (*see id.* at ¶¶ 59-62). According to Plaintiff, although a copy of the title was not mailed to his residence, a copy of the title was sent to his cell phone, which Plaintiff was able to download and copy. (*Id.* at ¶ 63). On December 19, 2018, Plaintiff took all of the information on the checklist, and his vehicle, to the Dallas County DMV office and was allowed to register his vehicle in Alabama. (*Id.* at ¶¶ 64-65).

Plaintiff's Complaint arguably references claims against the various movants (and one other Defendant who has not appeared in this action[3]) at different junctures (*compare* Doc. 1, at VI-X (Moore's purported jurisdictional statement, which sets forth arguable violations/claims) *with id.* at ¶ 79 (Moore's citation to the Equal Credit Opportunity Act, 15 U.S.C. § 1691, within the context of his factual allegations against DriveTime, Bridgecrest, and Raymond C. Fidel) and *id.* at ¶¶ 97-99 (in another purported jurisdictional statement, Plaintiff appears to assert claims against various movants)) before "reaching" the portion of the complaint where one would expect a Plaintiff to set forth, in separate counts, the claims he was asserting against all of the named Defendants, including the movants (*see id.* at ¶¶ 100-132). However, this latter

---

[3]     Moore certainly identified the Dallas County Department of Motor Vehicles in his Complaint as a Defendant (Doc. 1, at 1) and he purportedly served that entity with a copy of the complaint at the same time he served the Dallas County Commission and Kim Ballard, the Chairperson of the Dallas County Commission (*see* Doc. 9); however, only the Dallas County Commission and Kim Ballard have appeared in this action (*see* Doc. 17 (motion to dismiss filed by the Dallas County Commission and Commission Chair Kim Ballard)). Because the Dallas County DMV has not appeared in this case, it is questionable whether this entity was properly served. Nevertheless, to the extent the Court allows Mr. Moore to file an amended complaint that is not a shotgun pleading, Plaintiff likely will have the opportunity to serve the Dallas County DMV with the amended complaint.

portion of the Complaint contains much legalese, including citation to and discussion of the contents of various statutes and federal cases (*compare, e.g., id.* at ¶ 101 (quoting 42 U.S.C. § 12101(4)), ¶¶ 105-07 (discussing at length the decision in *Wilson v. Thomas,* 43 F.Supp.3d 628 (2014)), and ¶ 110 (quoting 42 U.S.C. § 2000d-7) *with* ¶ 113 (defining abuse of power), ¶¶ 119-22 (citation to various federal cases and the pleading requirements of the Federal Rules) and ¶¶ 123-24 (citation to the "commit clause" of the Fourteenth Amendment and "exceptions" to the Slaughterhouse case rule) and *with* ¶¶ 127-29 (citation to various federal cases and their holdings respecting the civil RICO provision)), along with the apparent "combining" of causes of action against defendants (*compare id.* at ¶ 131 (Moore's apparent allegation that the actions of DriveTime, Bridgecrest and Fidel amount to "a violation of 15 U.S.C. § 1691,  and a deprivation of civil rights and a conspiracy to deprivate (sic) civil right[s] under 42 U.S.C. §[§] 1983, 1985, [and] 1981.") *with id.* at ¶¶ 111-124 (lumping claims against multiple defendants, in this instance, the Dallas County Commission, its Chair Kim Ballard, and the Dallas County DMV office)).

Based upon the foregoing, the undersigned finds that Moore's Complaint should be dismissed in its entirety as an impermissible shotgun pleading. Nevertheless, given that the majority of movants have attempted to identify the claims they believe Moore is asserting against them, the undersigned will address whether Moore has stated a claim against any of the movants and whether certain claims should be dismissed with prejudice based upon Plaintiff's failure (and inability) to assert facts showing that he is entitled to relief. Along the way, the undersigned will also address whether this Court can exercise personal jurisdiction over Defendant Raymond Fidel and whether

Defendants Steve Marshall and the ALEA are immune from suit under 42 U.S.C. § 1983.

## CONCLUSIONS OF LAW

**A.** **Pleading Standard.** The sufficiency of Plaintiff's claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P. 8(a) "something beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d

9

1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* 568 U.S. 1088, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id.* at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Systems AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing

that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted). Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129

S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly/Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied, _____* U.S. *_____*, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings.").

"[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

In addition to the pled averments relevant to these Plaintiffs' claims, documents which are referenced in, or central to, the claims presented are incorporated as exhibits to the complaint, and may be considered without converting a Fed.R.Civ.P. 12(b) motion to dismiss into a Fed.R.Civ.P. 56 motion for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, in ruling on a motion to dismiss, courts consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (citations omitted), *cert. denied,* 553 U.S. 1004, 128 S.Ct. 2055, 170 L.Ed.2d 794 (2008).

**B.**     **Federal Rules of Civil Procedure 8 and 10 and Shotgun Pleadings.**

While courts in the Eleventh Circuit generally afford the pleadings of *pro se* litigants liberal construction, those pleadings must nonetheless "'conform to procedural rules.'" *Muhammad v. Muhammad,* 654 Fed. Appx. 455, 456 (11th Cir. June 27, 2016) (quoting *Albra v. Advan, Inc.,* 490 F.3d 826, 829 (11th Cir. 2007)), *cert. denied,* ___ U.S. ____, 137 S.Ct. 1206, 197 L.Ed.2d 247 (2017).

> Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Though there is no required technical form, "[e]ach allegation must be simple, concise, and direct." *Id.* at 8(d)(1). The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quotation omitted) (ellipses in original). Additionally, each separate claim should be presented in a separate number paragraph, with each paragraph "limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b).

*Id.* at 456-57.

"A complaint that fails to follow Rules 8 and 10 may be classified as a shotgun pleading." *Id.* at 457. In particular, "[s]hotgun pleadings violate Rule 8(a)(2)'s 'short and plain statement' requirement by 'failing . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *McDonough v. City of Homestead,* 771 Fed.Appx. 952, 955 (11th Cir. May 7, 2019), quoting *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1294-95 (11th Cir. 2018) (other citation omitted). Stated somewhat differently, a shotgun pleading is defined by "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading[.]" *Beckwith v. Bellsouth Telecommunications Inc.,* 146 Fed.Appx. 368, 371 (11th Cir. Aug. 22, 2005), citing *Byrne v. Nezhat,* 261 F.3d 1075, 1129-30 (11th Cir. 2001).

In describing the nature of a shotgun pleading, the Eleventh Circuit has observed that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir.

2002). Such pleadings typically are characterized by either factually unsupported claims or an inability to discern which allegations of fact are intended to support which claims and frequently fail to specify which defendant is responsible for each act alleged. *Beckwith, supra,* 146 Fed.Appx. at 372; *cf. McDonough, supra,* 771 Fed.Appx. at 955 ("Shotgun pleadings are characterized by: (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act."). As a result, a district court "'whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 806 n.4 (11th Cir. 2010), quoting *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998). And, consequently, the Eleventh Circuit has instructed district courts to prohibit shotgun pleadings as fatally defective. *See, e.g., B.L.E. ex rel. Jefferson v. Georgia,* 335 Fed.Appx. 962, 963 (11th Cir. Oct. 23, 2009) (citations omitted). To allow such a pleading would place an unjustifiable burden on the Court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant." *Beckwith, supra,* 146 Fed.Appx. at 372.

     **C.**    **Analysis.**  Although Plaintiff Moore believes that his Complaint complies with the pleading requirements of the Federal Rules of Civil Procedure and contains a short and plain statement of his claims showing that he is entitled to relief (*see, e.g.,* Doc. 26, at ¶ 6 ("This Defendant is asking for a more definite statement, when no more

definite statement is warrant[ed] or necessary.")), nothing about Moore's 62-page, 138-paragraph, handwritten complaint (with a "forward" of some 11 additional pages) is "short and plain." *See, e.g., Harrison v. Board of Regents of University System of Georgia,* 519 Fed.Appx. 641, 643 (11th Cir. May 17, 2013) (finding that Plaintiff's second-amended complaint, "at 82 pages and 295 paragraphs in length, could not be characterized as 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") *with Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001) (finding that a 58-page complaint naming 14 defendants was not a "'short and plain statement of the claim'"); *compare id. with, e.g., Abell v. Sothen,* 214 Fed.Appx. 743, 747 (10th Cir. Jan, 24, 2007) (finding a 37-page complaint was not a short and plain statement) and *Miles v. Trempealeau County,* 204 Fed.Appx. 570, 573 (7th Cir. Nov. 8, 2006) (finding that a rambling 28-page complaint failed to meet Rule 8's requirements).

Moore's complaint contains several "statements" related to the grounds of the court's jurisdiction (*compare, e.g.,* Doc. 1, at VI-X (entitled Statement of Jurisdiction) *with id.* at ¶ 97 (alleging federal-question and diversity jurisdiction)), which are neither short and plain, *see* Fed.R.Civ.P. 8(a)(1) ("A pleading that states a claim for relief must contain: [] a short and plain statement of the grounds for the court's jurisdiction") nor accurate.[4] Plaintiff's Complaint contains a multitude of irrelevant factual allegations and

---

[4] The jurisdictional statements are inaccurate because Plaintiff, in support of his conclusory statements that this Court can exercise diversity jurisdiction, twice cites to 28 U.S.C. § 1391 (*see id.* at VI & ¶ 97), the general venue statute. In addition, this Court categorically cannot exercise diversity jurisdiction in this matter because Plaintiff is a citizen of Alabama (*see* Doc. 1, at ¶ 10 ("[O]n or about 6/23/2018, this Plaintiff decided to move back to Selma, Alabama[,] [i]n order to live the rest of his life there[.]")) as are most of the named Defendants, including Alabama Attorney General Steve Marshall and Dallas County Commission Chair Kim Ballard. *Cornelius v. U.S. Bank Nat'l Ass'n,* 452 Fed.Appx. 863, 865 (11th Cir. Nov. 29, 2011)

legal conclusions (*see, e.g.,* Doc. 1, at ¶¶ 1-4, 6-7, 35-36, 65, 79, 101, 105-07, 110, 113-118, 120, 122-24, 127-29 & 132-33), including legal argument that he has complied with the pleading requirements set out in the Federal Rules of Civil Procedure (*see id.* at ¶¶ 119 & 121). Moreover, Moore's complaint is a quintessential shotgun pleading of at least the third and fourth types described in *McDonough, supra,* 771 Fed.Appx. at 955 (and also, most probably, the second type), because he has failed to separate each cause of action or claim for relief into distinct counts (*see* Doc. 1), thereby running afoul of Rule 10(b), *compare id.* ("A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]") *with Muhammad, supra,* 654 Fed. Appx. at 457 ("[E]ach separate claim should be presented in a separate number paragraph, with each paragraph 'limited as far as practicable to a single set of circumstances.' Fed.R.Civ.P. 10(b)."), and because Moore has failed to specify which defendant is (or defendants are) responsible for each act alleged (*compare, e.g.,*   Doc. 1, at ¶ 131 (combining multiple claims/causes of action against multiple defendants, namely, DriveTime, Bridgecrest and Fidel) *with id.* at ¶¶ 111-124 (lumping claims against multiple defendants, in this instance, the Dallas County Commission, its Chair Kim Ballard, and the Dallas County DMV office)). In short, because Moore's shotgun pleading does not

---

("Jurisdiction under 28 U.S.C. § 1332 based upon the parties' diversity of citizenship 'requires complete diversity—every plaintiff must be diverse from every defendant.'"); *see also Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806).

comport with the standards of Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, it is impossible to find that Plaintiff has stated any claim against the Defendants. Therefore, while it is **RECOMMENDED** that Moore's Complaint be stricken and dismissed for failure to comply with the pleading requirements of the Federal Rules of Civil Procedure, it is further recommended that Moore be given one chance to amend his complaint to cure all pleading deficiencies and bring any viable claim he may have against one or more of the Defendants. *See LaCroix v. Western District of Kentucky,* 627 Fed.Appx. 816, 819 n.1 (11th Cir. Sept. 28, 2015), *cert. dismissed,* _____ U.S. ___ , 136 S.Ct. 996, 194 L.Ed.2d 2 (2016). At the same time, however, it is the undersigned's recommendation that the Court should find that it cannot exercise personal jurisdiction over Raymond Fidel, that Defendants Steve Marshall and ALEA are entitled to immunity with respect to any § 1983 claim asserted against them and that any and all claims asserted against Defendant Marshall otherwise should be dismissed with prejudice, that Defendants Dallas County Commission and Chairperson Kim Ballard and any claims purportedly asserted against them should be dismissed with prejudice, and that certain claims asserted against Defendants DriveTime and Bridgecrest arguably should be dismissed with prejudice. Moreover, Plaintiff should be specifically advised that if he cannot allege facts sufficient to support each and every claim he wishes to assert against any remaining Defendants, he should not assert those claims in this Court.[5]

---

[5]     Before service of the amended pleading on the Defendants who have already made an appearance (save Fidel, Steve Marshall, the Dallas County Commission, and Chair Kim Ballard, against whom Plaintiff cannot proceed), or on the previously-named Defendant who has not appeared (the Dallas County DMV) and any newly-added Defendant (e.g., Dallas

18

**D.  Moore's Purported Claims Against the Dallas County Commission and Chairperson Kim Ballard.** The undersigned need agree with these Defendants that Plaintiff's Complaint contains no specific factual allegations against them (*compare* Doc. 17, at 2 *with* Doc. 1, at ¶¶ 11-20 & ¶¶ 33-64). Indeed, there is no specific mention of Chairperson Kim Ballard anywhere in the factual allegations (*see id.*) and while there are several references to the "Commission" (*see id.* at ¶¶ 15, 39, 40, 42 46, 48, 50, 51, 52, 54-56 & 59), it is clear that Moore bases his references to the Dallas County Commission (as well as his "claims") on a DMV Clerk's written notation on a checklist provided to him to "[h]ave lienholder fax over copy of title to Dallas Co. Commissions 334 874 2591[.]" (*Compare id. with* Doc. 1, at ¶¶ 15 & 39 *with* Doc. 26, Attachment 1). In other words, the sole connection these two Defendants purportedly have with this case, and Plaintiff's attempts to register his vehicle with the State of Alabama, is a fax number supplied to Plaintiff by a Dallas County DMV Clerk; Plaintiff's Complaint contains no direct factual allegations respecting acts or omissions by either the Dallas County Commission or Chairperson Kim Ballard (*see* Doc. 1). And based on Plaintiff's response to the motion to dismiss filed by the Dallas County Commission and Chairperson Kim Ballard, it appears that Plaintiff now stakes the position that he was "mislead" into believing that the handwritten word "Commissions" on the out-of-sate registration form given to him on July 11, 2018 "meant [] Dallas County Commission and Kim Ballard

---

County License Commissioner Edward L. Foster), the undersigned **RECOMMENDS** that the amended pleading be referred to him to ensure compliance with the pleading requirements set forth in the federal rules and to avoid the expense of additional motion practice by the Defendants.

Chairman[,]" as opposed to the Dallas County License Commissioner (*see* Doc. 26, at 7) and that, as a result, both the Dallas County Commission and the Dallas County License Commissioner are of "the same municipal corporation, . . . the same governing body, and [] the same county government[]" and should be considered "compulsory joinders[] in this action[.]" (*See id.* at 7-8). Regardless of whether Moore was misled or not, any "misleading" was not engaged in by the Dallas County Commission or Chairperson Kim Ballard; instead, the only allegations of omissions or actions in Moore's complaint (or his response in opposition to the motion to dismiss) are directed to the Dallas County DMV Clerk he communicated with on July 11, 2018. In the absence of factual allegations connecting the Dallas County Commission and Chair Kim Ballard to Plaintiff's attempts to register his vehicle with the State of Alabama, Moore simply has not provide this Court with sufficient factual matter, accepted as true, to state any claim to relief that is plausible on its face; in other words, there is simply insufficient factual matter relative to these two Defendants to allow this Court to draw the reasonable inference that these Defendants are liable for the misconduct alleged. *See Iqbal, supra*, 556 U.S. at 678, 129 S.Ct. at 1949. Accordingly, the undersigned **RECOMMENDS** that any and all claims Plaintiff has asserted against the Dallas County Commission and Chair Kim Ballard be **DISMISSED WITH PREJUDICE**.[6]

---

[6] The Dallas County DMV has not appeared in this case because Plaintiff has failed to serve process properly on this Defendant. The shotgun nature of Plaintiff's complaint has prevented compliance with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure and, consequently, from stating a short and plain statement of his claim showing that he is entitled to relief against the Dallas County DMV.

**E.    Plaintiff's Identified Claims Against Alabama Attorney General Steve Marshall and the ALEA**.    Although, as the undersigned has previously determined, Plaintiff's Complaint is indisputably a shotgun pleading, Defendants Marshall and the ALEA have reasonably read that pleading as asserting claims against them under 42 U.S.C. §§   1983 and 12101 (*compare* Doc. 24, at 3-7 *with* Doc. 1, at 40 & 42-48).[7] Indeed, Plaintiff's claims against these two defendants appears to be that Ala. Admin. Code Regulation 760-X-20-.03 is discriminatory under 42 U.S.C. §§ 1983 and 12101. (*See* Doc. 1, at ¶¶ 97 & 108).

**1.    § 1983 Claim and Sovereign Immunity and the Eleventh Amendment**. As set forth by these Defendants (Doc. 24, at 3), Alabama's constitution spells out the state's sovereign immunity in Article I, § 14, which states "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala.Const. Art. I, § 14. In

---

[7]    To the extent Plaintiff may argue that he has asserted a claim against Marshall and the ALEA under 42 U.S.C. § 2000d-7 (*see* Doc. 28, at 6; *compare id. with* Doc. 1, at ¶ 110), a plain reading of that statute reveals that it does not offer Plaintiff a cause of action in and of itself. Instead, that statute was simply enacted to address the limits of State immunity under the Eleventh Amendment for certain brought in federal court for violations of certain statutes specifically listed in § 2000d-7(a)(1) and with respect to "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d(a)(1). In addition, Plaintiff's overt insertion of 42 U.S.C. § 1983 into the quoted text of § 2000d-7(a)(1) certainly has no impact or import with respect to this Court's analysis of these Defendants' Eleventh Amendment immunity argument.

Plaintiff's lengthy detour down the path of the "commit" clause of the Fourteenth Amendment and the commerce clause in his response in opposition to these Defendants' motion to dismiss (*see* Doc. 28, at 8-10) misses the mark because he arrives at this argument by reference to ¶ 123 of his complaint (*see id.* at 8), a paragraph which is part of his argument against the Dallas County Commission, its Chair Kim Ballard, and the Dallas County DMV (*see* Doc. 1, at ¶¶ 111-124 (Plaintiff's argument section with respect to the Dallas County Commission, Kim Ballard, and Dallas County DMV)), not part of his argument against Steve Marshall and the ALEA (*see id.* at ¶¶ 100-110 (argument section directed to Marshall and the ALEA)).

addition, the Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State[,]" U.S. Const. Amend. XI, has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (citation omitted); *see also Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Stated somewhat differently, the Eleventh Amendment prohibits suits for damages against a state by citizens of that state or another state, absent a waiver by that state. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Thus, it is clear "that in the absence of a consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment[,]" *Penhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 57 (1984) (citations omitted), and, as well, "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Id.* at 101, 104 S.Ct. at 908, quoting *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) (other citations omitted); *see also id.* at 101 & 101-02, 104 S.Ct. at 908 & 908-09 ("Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.' . . . And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.").

22

These principles act as a bar to Moore's § 1983 claim against Attorney General

Steve Marshall and the ALEA, as Moore attacks no direct action taken by Marshall

(such that his suit against Marshall is really against the State of Alabama), *see*

*Penhurst, supra,* and because the ALEA is an arm of the state for purposes of Eleventh

Amendment sovereign immunity, *compare, e.g., Taylor v. Department of Public Safety,*

142 Fed.Appx. 373, 374 (11th Cir. June 23, 2005) (recognizing that "state agencies

share the same Eleventh Amendment immunity as do States."), *cert. denied,* 546 U.S.

1095, 126 S.Ct. 1084, 163 L.Ed.2d 863 (2006), *with Thomas v. Florida Highway Safety*

*and Motor Vehicles,* 2019 WL 2454568, *5 (M.D. Fla. Feb. 14, 2019) (finding plaintiff's

claims, which included § 1983 claims, against the ALEA barred under the Eleventh

Amendment), *report and recommendation adopted,* 2019 WL 1724214 (M.D. Fla. Apr.

18, 2019), and *Otey v. Director of Alabama Law Enforcement Agency,* 2017 WL

1352231, *3 (N.D. Ala. Mar. 23, 2017) (affording defendant director of ALEA sovereign

immunity against claims for damages under § 1983), *report and recommendation*

*adopted,* 2017 WL 1317947 (N.D. Ala. Apr. 10, 2017), *appeal dismissed sub nom. Otey*

*v. State,* 2017 WL 5185309 (11th Cir. Aug. 3, 2017).[8]  Accordingly, because Moore's §

---

[8]     The Supreme Court has recognized three limited exceptions to the rule barring §
1983 actions against a state, a state agency, or state officials sued in their official capacity.
The first exception is when a state has waived its Eleventh Amendment sovereign immunity and
has consented to suit in federal court. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238,
105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985), *superseded by statute on other grounds as stated*
*in Brennan v. Stewart,* 834 F.2d 1248, 1260 n.22 (5th Cir. 1988). This exception does not apply
here because the State of Alabama has not waived its immunity to suit in § 1983 cases, *see*
*Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978), the
Alabama Constitution explicitly stating (as aforesaid) that "the State of Alabama shall never be
made a defendant in any court of law or equity." Ala. Const. Art. I, § 14; *see also, e.g., Patterson*
*v. Gladwin Corp.,* 835 So.2d 137, 142 (Ala. 2002) ("This immunity may not be waived.").

        The second exception is when Congress has properly abrogated sovereign immunity

1983 claim against Alabama Attorney General Steve Marshall[9] and the ALEA[10] is

barred under the Eleventh Amendment, this claim should be **DISMISSED WITH**

**PREJUDICE**.

      2.    **Claim Under 42 U.S.C. § 12101**.  As previously recognized, Marshall

and the ALEA reasonably read Moore's complaint to assert that Regulation 760-X-20-

.03[11] in the Alabama Administrative Code should be ruled as discriminatory under the

---

through its powers under the Fourteenth Amendment; however, such an abrogation has not occurred with respect to § 1983 claims. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-72, 116 S.Ct. 1114, 1123-32, 134 L.Ed.2d 252 (1996); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990).

      The third exception, established under *Ex parte Young*, recognizes that the Eleventh Amendment does not bar § 1983 actions against state officials when the action seeks prospective injunctive relief to end continuing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908); *see also Seminole Tribe of Fla.*, 517 U.S. at 73, 116 S.Ct. at 1132 (citation omitted); *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999), *cert. denied,* 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d 233 (2000). As noted in *Summit Medical*, "[b]ecause of the important interests of federalism and state sovereignty implicated by *Ex parte Young* ... the doctrine is not without limitations." 180 F.3d at 1337. One limitation is that "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law." *Id.* (citation omitted). "A plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.* In the instant suit, Plaintiff seeks only monetary damages for past conduct. Because he has not asserted a claim for injunctive relief to end continuing violations of federal law, the *Ex parte Young* exception does not apply.

    [9]    Besides, Moore's Complaint contains absolutely no factual allegations against Steve Marshall, much less make note of any specific action taken by Marshall (Doc. 1, at ¶¶ 9-31; *see id.* at ¶¶ 100-110); therefore, both Moore's § 1983 claim against Marshall, as well as his claim against Marshall under 42 U.S.C. § 12101(4), should be **DISMISSED WITH PREJUDICE** on the basis that Plaintiff's Complaint contains insufficient factual matter to allow this Court to draw the reasonable inference that Marshall is liable for the misconduct alleged. *See Iqbal, supra*, 556 U.S. at 678, 129 S.Ct. at 1949

    [10]    In addition, Plaintiff cannot maintain his § 1983 claim against the ALEA because "[i]n order to succeed on a § 1983 claim, 'a plaintiff must show that he . . . was deprived of a federal right *by a person* acting under color of state law[,]'" *Taylor, supra,* 142 Fed.Appx. at 374, quoting *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1303 (11th Cir. 2001), and a state agency is not a "person" for § 1983 purposes, *Taylor,* 142 Fed.Appx. at 374-75.

    [11]    This regulation reads, in its entirety, as follows:

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[12] The Eleventh

Circuit has made clear that "[t]o state a claim under Title II of the ADA, a plaintiff must

allege: (1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded

from participation in or . . . denied the benefits of the services, programs, or activities of

a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of

such disability.'" *Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir. 2001), quoting 42

U.S.C. § 12132. The statute defines disability as "a physical or mental impairment that

substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A).

Here, Plaintiff's Complaint does not allege that he is a "qualified individual with a

disability" and, in the undersigned's opinion, he cannot allege that he is a "qualified

individual with a disability[.]" To be sure, Plaintiff, in a rote and conclusory manner,

appears to aver in the complaint that his diabetes is a "disability," albeit a medically

---

(1)　　Medical Review Standards For Operator Licenses. Whenever the department [the ALEA] learns that a person applying for, renewing, or holding an operator's license has a progressive, recurring or debilitating medical condition which may affect　safe driving, the department may require the person to provide the department with medical information about the person's medical condition. The department shall review the medical information using the standards specified in this chapter.

(2)　　Evaluation. A license issued to a person under this chapter may be restricted on the basis of a recommendation of a physician, a vision specialist, a review board, or on the results of a driving examination or evaluation.

Ala. Admin. Code r. 760-X-20-.03.

[12]　　As set forth in footnote 9, *supra*, since Moore makes no factual allegations against Steve Marshall, and there are no such allegations to make since the "ALEA is the state agency responsible for issuing drivers' licenses in Alabama[,]" *Alabama Law Enforcement Agency v. Carter,* 263 So.3d 1072, 1073 (Ala. 2018), Plaintiff's § 12101 claim against Marshall should be dismissed with prejudice.

treatable disability (*see* Doc. 1, at ¶ 104) and, thereafter, encourages the Court to "rule

that the (privileges to drive), is a (major life activity)." (*Id.* at ¶ 109). Unfortunately for

Plaintiff, however, the Eleventh Circuit has determined that driving is not a major life

activity under the ADA, *Collado v. United Parcel Service, Co.,* 419 F.3d 1143, 1157-58

(11th Cir. 2005) ("[W]e have held that driving is not a major life activity for purposes of

the ADA."); *Chenoweth v. Hillsborough County,* 250 F.3d 1328, 1329-1330 (11th Cir.

2001)   ("Under the ADA a disability is 'a physical or mental impairment that

substantially limits one or more . . . major life activities.' 42 U.S.C. § 12102([1])(A).

Major life activities are enumerated by EEOC regulation as 'functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing,

learning, and working.' 29 C.F.R. § 1630.2(i). Although this enumeration is not

exhaustive, driving is not only absent from the list but is conspicuously different in

character from the activities that are listed. It would at the least be an oddity that a major

life activity should require a license from the state, revocable for a variety of reasons

including failure to insure. We are an automobile society and an automobile economy,

so that it is not entirely farfetched to promote driving to a major life activity; but millions

of Americans do not drive, millions are passengers to work, and deprivation of being

self-driven to work cannot be sensibly compared to inability to see or to learn."), *cert.*

*denied,* 534 U.S. 1131, 122 S.Ct. 1071, 151 L.Ed.2d 973 (2002), and since Moore has

not alleged in his complaint any other major life activity that has been significantly

limited/impacted by his diabetes, he cannot be considered disabled under the ADA, *see*

*Collado, supra,* 419 F.3d at 1157 (finding that "the long-term existence of an impairment

[like diabetes] is not enough to establish a disability. Instead, a plaintiff must show that

the impairment he suffered in the past substantially limited him in at least one major life activity."). Consequently, the undersigned **RECOMMENDS** that the Court find that because Plaintiff's complaint does not allege facts which establish he suffers from a disability as defined by the ADA,[13] Plaintiff's claim against the ALEA pursuant to 42 U.S.C. § 12101 should be **DISMISSED**.

F.     **Can this Court Exercise Personal Jurisdiction over Defendant Raymond Fidel?** Before trying to identify the claims Mr. Moore has purportedly raised against Defendants DriveTime, Bridgecrest, and Raymond Fidel, the undersigned first considers whether this Court can exercise personal jurisdiction over Raymond Fidel, in light of this Defendant's Rule 12(b)(2) motion to dismiss all claims asserted against him for lack of personal jurisdiction. (*See* Doc. 7, at 1 & 3-4).

As an initial matter, Plaintiff Moore must bear the burden of establishing a *prima facie* case of personal jurisdiction over the nonresident Defendant.  *Andy's Music, Inc. v. Andy's Music, Inc.*, 607 F.Supp.2d 1281, 1285 (S.D. Ala. 2009) (citations omitted). "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction."  *Future Technology Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted); *see also United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the

---

[13]     Given Plaintiff's failure in this regard, the undersigned finds no reason to consider the movants' additional argument that Plaintiff has not alleged that because of his disability he was excluded from participation in or denied services, programs, or activities offered by a public entity. Nevertheless, the undersigned would note that it is unfathomable that a **temporary** suspension of an individual's driver's license could ever violate the ADA.

initial burden of alleging in the complaint sufficient facts to make out a prima facie case

of jurisdiction." (citations omitted)). "The district court must accept the facts alleged in

the complaint as true, to the extent they are uncontroverted by the defendant's

affidavits. . . . [W]here the plaintiff's complaint and the defendant's affidavits conflict, the

district court must construe all reasonable inferences in favor of the plaintiff." *Madara v.

Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *see also PVC Windoors, Inc. v. Babbitbay

Beach Constr., N.V.,* 598 F.3d 802, 810 (11th Cir. 2010) ("Where the evidence

presented by the parties' affidavits and deposition testimony conflicts, the court must

construe all reasonable inferences in favor of the non-movant plaintiff. . . . If such

inferences are sufficient to defeat a motion for judgment as a matter of law, the court

must rule for the plaintiff, finding that jurisdiction exists." (citation, internal marks and

footnote omitted)).

A nonresident defendant is amenable to a forum's personal jurisdiction if: "(1)

[he] possesses sufficient minimum contacts with the forum State to satisfy due process

requirements, ***and*** (2) the forum's exercise of jurisdiction comports with '"traditional

notions of fair play and substantial justice."'" *Vermeulen v. Renault U.S.A., Inc.*, 975

F.2d 746, 754 (11th Cir. 1992) (emphasis supplied), quoting in part *International Shoe

Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945), in turn

quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct 339, 343, 85 L.Ed. 278 (1940);

*see also Madara, supra,* 916 F.2d at 1516 (same).

With respect to the first element (minimum contacts), the extent of a nonresident

defendant's contacts with the forum state may give rise to either "general" or "specific"

jurisdiction. *See, e.g., Andy's Music, Inc., supra,* 607 F.Supp.2d at 1287 ("As this court

has stated elsewhere, '[j]urisdiction may be either general or specific,' with general jurisdiction applying where a defendant's activities in the forum state are 'substantial or continuous and systematic, regardless of whether those activities gave rise to the lawsuit' and specific jurisdiction where 'a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.'" (citations omitted)). Because a minimum contacts analysis is "immune to solution by checklist," a nonresident defendant's contacts must be viewed both quantitatively and qualitatively. *Sloss Indus. Corp., supra*, 488 F.3d at 925 (internal quotations and citation omitted).

General jurisdiction applies where a defendant's affiliations/contacts with the forum are so "continuous and systematic" as to render the defendant essentially at home in the forum, regardless of whether those affiliations/contacts actually give rise to the claims at issue. *Daimler AG v. Bauman,* 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014); *see also Morgan v. North Mississippi Medical Center, Inc.*, 403 F.Supp.2d 1115, 1119 (S.D. Ala. 2005) ("Under general jurisdiction, there must be a showing of 'continuous and systematic' contacts between the defendant and the forum state even if those contacts are unrelated to the plaintiff's claims."), *aff'd,* 225 Fed.Appx. 828 (11th Cir. 2007), *cert. denied,* 552 U.S. 1098, 128 S.Ct. 888, 169 L.Ed.2d 727 (2008). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000), *cert. denied,* 534 U.S. 827, 122 S.Ct. 68, 151 L.Ed.2d 34 (2001). Conversely, specific jurisdiction "arises out of a party's activities in the forum that are related to the cause of action alleged in the

complaint[,]" *id.* at 1291 (citations omitted); *see also PVC Windoors, Inc., supra,* 598 F.3d at 808 ("Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." (citation and internal quotation marks omitted)), "'the central concern of the inquiry'" being "'the relationship among the defendant, the forum, and the litigation.'" *Daimler, supra,* 134 S.Ct. at 754 (citations omitted); *see also Walden v. Fiore,* 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation."'" (citations omitted)); *cf. Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1355 (11th Cir. 2013) ("In specific jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposely availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's law; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'") (citations omitted)). The minimum contacts requirement is grounded in fairness, with a focus on ensuring that the nonresident defendant should reasonably anticipate being haled into court in the forum State. *See Consolidated Dev. Corp.*, 216 F.3d at 1291. "Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Madara, supra*, 916 F.2d at 1516   (citations and internal footnote omitted). "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities

at residents of the forum [. . .] and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (internal citations omitted); *see also Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (noting that a nonresident defendant who purposefully avails himself of the privilege of conducting activities within the forum State "invok[es] the benefits and protections of its laws[]").

The second element for the exercise of personal jurisdiction (fair play and substantial justice) requires the Court's consideration of a number of factors: "(a) the burden on the defendant[;] (b) the forum State's interest in adjudicating the dispute[;] (c) the plaintiff's interest in obtaining convenient and effective relief[;] (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies[;] and (e) the shared interest of the several States in furthering substantive social policies." *See e.g., McGow v. McCurry*, 412 F.3d 1207, 1216 (11th Cir. 2005) (internal citations omitted), *abrogated on other grounds as recognized in Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249 (11th Cir. 2010); *Molex*, 887 F. Supp. 2d at 1203 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) and recognizing these same five factors)).

Here, Plaintiff's complaint contains no specific allegations personal to Raymond Fidel and, therefore, Moore has not pled sufficient material facts to establish the basis for exercising personal jurisdiction over the nonresident Defendant. Indeed, Plaintiff's complaint contains no description of any party defendant to this action, and certainly not Fidel (*e.g.,* Moore makes no allegation regarding Fidel's domicile) and nowhere does

31

the complaint set forth even one contact Fidel had with Alabama from which Moore's claims arise out of or relate to. (*See* Doc. 1.) Therefore, general personal jurisdiction is out, *compare Goodyear Dunlap Tire Operations, S.A. v. Brown,* 564 U.S. 915, 924, 131 S.Ct. 2846, 2853, 180 L.Ed.2d 796 (2011) ("For an individual, the paradigm for the exercise of general personal jurisdiction is the individual's domicile.") *with Baker v. Kinsey,* 2016 WL 3924222, *1 (N.D. Ala. July 21, 2016) ("Since everyone agrees Kinsey is not an Alabama domiciliary . . ., general personal jurisdiction is out."), as is specific personal jurisdiction, *see, e.g., PVC Windoors, Inc., supra,* 598 F.3d at 808 ("Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." (citation and internal quotation marks omitted)). In short, given that Moore has failed to make out a *prima facie* case of personal jurisdiction over Fidel, as is his burden, *see, e.g., Andy's Music, Inc., supra*, 607 F.Supp.2d at 1285, the undersigned **RECOMMENDS** that all claims asserted against Defendant Fidel be dismissed for lack of personal jurisdiction.[14]

### G.    Plaintiff's Purported Claims Against DriveTime and Bridgecrest.[15]

These movants have read Plaintiff's complaint as asserting the following claims against

---

[14]    Again, as with Steve Marshall and Kim Ballard, Moore's Complaint contains absolutely no factual allegations against Raymond Fidel, much less make note of any specific action taken by Fidel or omission by this Defendant (Doc. 1, at ¶¶ 40-89; *see id.* at ¶¶ 125-32); therefore, any claim Moore purports to state against Fidel also should be **DISMISSED WITH PREJUDICE** on the basis that Plaintiff's Complaint contains insufficient factual matter to allow this Court to draw the reasonable inference that Fidel is liable for any misconduct alleged. *See Iqbal, supra*, 556 U.S. at 678, 129 S.Ct. at 1949.

[15]    To the extent the defense of improper venue was available to Defendants DriveTime and Bridgecrest, they have waived that defense by not asserting it in this their initial Rule 12 motion. *Compare* Fed.R.Civ.P. 12(h)(1) *with Aero Technologies, LLC v. Lockton Companies Intern. Ltd.,* 406 Fed.Appx. 440, 441 (11th Cir. Dec. 28, 2010).

one or both of them: (1) a RICO claim under 18 U.S.C. § 1964; (2) discrimination claims under various federal statutes, namely, 15 U.S.C. § 1691 (the Equal Credit Opportunity Act) and 42 U.S.C. §§ 1981, 1983 and 1985; and (3) breach of contract. (*See* Doc. 7, at 5-15). As stated previously, the shotgun pleading nature of Plaintiff's complaint is starkly evident in the portion of Moore's complaint dealing with DriveTime and Bridgecrest's purported violations of 15 U.S.C. § 1691 and 42 U.S.C. §§ 1981, 1983 and 1985, as he combines all of these causes of action together without specifying which defendant is responsible for which act (*see* Doc. 1, at ¶ 131). *See McDonough, supra,* 771 Fed.Appx. at 955 ("Shotgun pleadings are characterized by: . . . (4) combining multiple claims against multiple defendants without specifying which defendant is responsible for which act."). To make matters even more confusing, in his response in opposition (Doc. 19), Plaintiff makes no mention whatsoever of 42 U.S.C. § 1981, which begs the question of whether he ever intended to assert a § 1981 claim against DriveTime or Bridgecrest. Nevertheless, the undersigned does not end his analysis here but, instead, goes further and finds that Plaintiff's complaint does not state any claim against DriveTime and Bridgecrest. The undersigned now looks at each of Plaintiff's claims in turn, although not in the same order as the movants. Instead, the undersigned first looks at Moore's discrimination claims under 15 U.S.C. § 1691 and 42 U.S.C. § 1981, 1983 and 1985 before turning to his civil RICO and breach of contract claims.

    1. **15 U.S.C. § 1691 Claim**. The relevant section of the Equal Credit Opportunity Act ("ECOA")[16] upon which Plaintiff relies in attempting to state a claim

---

[16]    "'The ECOA is an anti-discrimination statute which prohibits creditors from discrimination in the extension of credit. . . . It was enacted to protect consumers from

under the ECOA (*see* Doc. 1, at ¶ 79) makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age[.]" 15 U.S.C. § 1691(a)(1). Thus, "[d]iscrimination on the basis of some protected class (such as race) is a vital component to [a plaintiff's] ECOA claim," *Nicholson, supra,* at *5, as is the requirement that a creditor took "adverse action"[17] against the plaintiff, *see Molina v. Aurora Loan Services, LLC,* 635 Fed.Appx. 618, 624 (11th Cir. Dec. 2, 2015) (discussing liability under § 1691(a)(1) and observing that "[t]o be liable under the ECOA, a creditor must take an 'adverse action' against the plaintiff."), *cert. denied,* 136 S.Ct. 2465, 195 L.Ed.2d 801 (2016). Recently, in *Russell v. Synchrony Financial,* 2018 WL 1618038, *5 (N.D. Ala. Apr. 4, 2018), the United States District Court for the Northern District of Alabama observed that "[t]o state a claim under 15 U.S.C. § 1691(a)(1), Plaintiff must plead specific facts that support a showing that she is a member of a protected class and that others of similar credit stature were given more favorable treatment than Plaintiff."

With these principles in mind, the undersigned turns to the contents of Plaintiff's complaint. Here, as in *Russell, supra,* Plaintiff does not identify what protected class was the basis for these Defendants' discrimination, and he "certainly has not alleged

---

discrimination by financial institutions.'" *Nicholson v. Johanns,* 2007 WL 3407045, *3 (S.D. Ala. Nov. 13, 2007) (quoting *Brown v. Interbay Funding, LLC,* 417 F.Supp.2d 573, 578 (D. Del. 2006) (other citation omitted)), *aff'd,* 275 Fed.Appx. 878 (11th Cir. Apr. 29, 2008).

[17] The statute defines adverse action to mean "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

that others of similar credit stature received more favorable treatment than []he did."
*Russell, supra*, at *5. Moreover, the contents of the complaint do not reflect any adverse action taken against Plaintiff as defined in § 1691(d)(6); instead, what the averments in the Complaint show is the extension of credit and while Plaintiff may not like the terms of the credit now, such dissatisfaction by Plaintiff   simply does not equate to an adverse action by DriveTime. In light of these factual deficiencies, Moore's ECOA claim should be dismissed.

     **2.**     <u>**Purported Claim Under 42 U.S.C. § 1981**</u>.   To support a claim brought pursuant to 42 U.S.C. § 1981, a plaintiff must allege and make a *prima facie* showing that "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more activities enumerated in the statute[.]" *Rutstein v. Avis Rent-A-Car Systems, Inc.,* 211 F.3d 1228, 1235 (11th Cir. 2000), *cert. denied sub nom. Zeilei Agudath Israel Bookstore v. Avis Rent-A-Car System, Inc.,* 532 U.S. 919, 121 S.Ct. 1354, 149 L.Ed.2d 285 (2001); *see also Kinnon v. Arcoub, Gopman & Associates, Inc.,* 490 F.3d 886, 891 (11th Cir. 2007) (same). The activities enumerated in the statute include the right "to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

     As these movants correctly point out, Plaintiff's only reference to § 1981 in the body of his complaint (Doc. 1, ¶ 131) arises in the context of a question he poses in the immediately preceding paragraph consisting of whether "a predatory loan, and a used

car sale, become[s] a discriminatory and fraudulent [e]nterprise and a sophisticated scam, to deprive the disadvantage[d] of his civil rights, to a fair, just, and meaningful transaction?" (*Id.* at ¶ 130). Needless to say, even if this question was intended by Plaintiff to be an affirmative allegation, he has not stated a claim under § 1981 as he has not alleged: (1) that he is a member of a racial minority; (2) that either DriveTime or Bridgecrest (or both) engaged in conduct evidencing an intent to discriminate on the basis of race; and (3) that he was "'actually denied the ability either to make, perform, enforce, modify, or terminate a contract'"[18] on account of the conduct engaged in by DriveTime and/or Bridgecrest with respect to the car sale and loan. And while the undersigned agrees with the movants that Plaintiff has not and cannot allege that he was denied the ability to make or perform a contract since he actually purchased a used 2011 Subaru Legacy, *see, e.g., Kinnon, supra,* 490 F.3d at 892, what strikes more of a cord with the undersigned is that nowhere in the complaint does Moore make even the suggestion that DriveTime or Bridgecrest engaged in conduct evidencing an intent to discriminate on the basis of race (*see generally* Doc. 1), *see, e.g., Rutstein, supra,* 211 F.3d at 1235, as the sole allegation he makes is that Defendant DriveTime exploited the lack of a credit history by unidentified persons/individuals "as bad credit[] in   order to sale (sic) them a used car[] with an outlandish and extremely high interest rate." (*Id.* at ¶ 126). Thus, in light of Plaintiff's wholesale failure to plead the material facts undergirding a § 1981 claim, and his wholesale failure to argue in his brief in opposition that he has stated a § 1981 claim (*see* Doc. 19), this claim is due to be dismissed.

---

[18]         *Kinnon, supra,* 490 F.3d at 892.

**3.** **Purported Claim Under 42 U.S.C. § 1983**.  42 U.S.C. § 1983 provides, in relevant measure, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005), citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988); *see also Melton v. Abston,* 841 F.3d 1207, 1220 (11th Cir. 2016) ("To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors.").

In his complaint, as with his § 1981 claim, Moore's reference to § 1983 arises in the context of questioning whether "a predatory loan, and a used car sale, become[s] a discriminatory and fraudulent [e]nterprise and a sophisticated scam, to deprive the disadvantage[d] of his civil rights, to a fair, just, and meaningful transaction?" (Doc. 1, ¶ 131; *see also id.* at ¶ 132). With this sweep of the proverbial pen, Moore simply has not alleged the violation of an identifiable and recognized constitutional right but even if he had, he cannot maintain a § 1983 action against DriveTime and Bridgecrest with

respect to the car sale and loan because the Defendants are private companies,[19] not

state actors. *Compare Crouch, supra,* at *4 (finding plaintiff could not sustain a 1983

action against "Mr. Gill, Cook Foods, Dr. Nair, and Montgomery Area Mental Health"

because those defendants were not state actors) *with Junie v. Greyhound Bus

Company,* 2013 WL 5676485, *1 & *3 (S.D. Fla. Oct. 18, 2013) (finding that Greyhound

Bus Company is a private business/company whose employees do not act under color

of state law and, therefore, it is not a proper defendant in a § 1983 action).[20] Thus,

Plaintiff's § 1983 claim should be dismissed.

    **4.**    **Purported Claim Under 42 U.S.C. § 1985**.   The complaint in this case is

vague and lacks factual details regarding claims in violation of 42 U.S.C. § 1985. The

only subsection of § 1985 that could possibly be applicable here is (3), which outlaws,

*inter alia*, conspiracies to deprive a person or class of persons of equal protection of the

laws. Moore's theory of relief under § 1985(3) is not clearly articulated in his Complaint;

however, it appears that Moore alleges that Bridgecrest and DriveTime conspired with

the Dallas County DMV Office to deprive him of his "right" to register his automobile in

---

[19]    The Court should take judicial notice that the Defendants are private companies. *See Couch v. Montgomery City Police Dep't,* 2013 WL 6096362, *4 n.2 (M.D. Ala. Nov. 20, 2013) ("The court takes judicial notice that Montgomery Area Mental Health is a non-profit organization.")).

[20]    Moore asserts this claim in the context of his claims against DriveTime and Bridgecrest, both private companies, and makes no allegation that these two Defendants conspired with any state actors relative to the car sale and loan. And Plaintiff's allegations against DriveTime and Bridgecrest simply do not satisfy any of the recognized exceptions that permit private parties to be considered state actors for purposes of § 1983. *Davis v. Self,* 547 Fed.Appx. 927, 933-34 (11th Cir. Nov. 19, 2013) ("A private party may be considered a state actor for purposes of § 1983 only in the 'rare circumstances' that one of these conditions is satisfied: the state compulsion test, the public function test, or the nexus/joint action test.").

38

the State of Alabama in a timely manner. (*See* Doc. 1, at IX & ¶¶ 130-32). Other than these conclusory allegations of a conspiracy, Plaintiff only offers averments that on a number of occasions he communicated with Bridgecrest (the lienholder) regarding the Dallas County DMV's need for a faxed copy of the title to the 2011 Subaru Legacy Moore was attempting to register in Alabama only to be told by the Dallas County DMV Office (when he communicated with that entity) that it had not received the requested facsimile.[21] (*See id.* at ¶¶ 37-63).

The elements necessary to prove a § 1985(3) claim are: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Trawinski v. United Technologies,* 313 F.3d 1295, 1299 (11th Cir. 2002), quoting *Childree v. UAP/GA AG CHEM, Inc.,* 92 F.3d 1140, 1146-47 (11th Cir. 1996); *see also Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627-28 (11th Cir. 1992) (same). In order to meet the second element, there must be "a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Lucerno, supra,* 954 F.2d at 628 (citations omitted). More importantly, it is incumbent upon a Plaintiff like Moore to show some evidence of agreement between the defendants. *Mickens v. Tenth Judicial Circuit,* 181 Fed.Appx.

---

[21] Ultimately, of course, on or about December 18, 2018, Plaintiff received a copy of the title on his cell phone (Doc. 1, at ¶ 63), and the following day successfully registered his automobile with the State of Alabama (*see id.* at ¶¶ 64-65).

865, 876 (11th Cir. May 22, 2006) ("The core of a conspiracy claim is an agreement between the parties; thus, where the plaintiff fails to allege an agreement, the pleading is deficient and subject to dismissal."), *cert. denied sub nom. Mickens v. Stewart Title Guaranty Co.,* 549 U.S. 1096, 127 S.Ct. 834, 166 L.Ed.2d 666 (2006); *see also Bailey v. Board of County Commissioners of Alachua County, Florida,* 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he lynchpin for conspiracy is agreement, which presupposes communication[.]"). Thus, a plaintiff "must show . . . an agreement between two or more people (at least one of whom is a state actor) to violate his constitutional rights . . . ." *American Federation of Labor and Congress of Industrial Organization v. City of Miami, Florida,* 637 F.3d 1178, 1191 (11th Cir. 2011).

Here, Moore has shown no evidence of an agreement or understanding or willful participation between Bridgecrest (or DriveTime[22]) and the Dallas County DMV Office and no reasonable inference can be drawn that these parties cooperated in a nefarious plot to "temporarily" deprive him of his "right" to register his vehicle with the State of Alabama.[23] Indeed, the allegations of Moore's Complaint establish that there was never

---

[22]     The undersigned makes only parenthetical note of DriveTime here because other than a conclusory argument that DriveTime and Bridgecrest conspired with the Dallas County DMV to deprive him of his "right" to register his automobile in the State of Alabama in a timely manner (*see* Doc. 1, at ¶¶ 130-32), Plaintiff makes no factual allegations against DriveTime in this regard.

[23]     Just as important, Moore has not established that he has a constitutional right, protected from both official and private encroachment, to the timely registration of his vehicle. *See Trawinski, supra,* 313 F.3d at 1299 ("The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under § 1985(3) requires proof of invidious discriminatory intent as well as the violation of a *serious constitutional right* protected not just from official but also from private encroachment. . . . The list of rights protected from both official and private encroachment is *short*[.]" (emphasis supplied)).

any communication between Bridgecrest (or DriveTime) and the Dallas County DMV office regarding Moore's attempts to register his vehicle in Alabama, only communication between Plaintiff and Bridgecrest and Plaintiff and the DMV office in Dallas County, Alabama regarding Plaintiff's endeavor in this regard. Because Plaintiff has alleged no communication by and between Bridgecrest (or DriveTime) and the Dallas County DMV office, there was no agreement and, therefore, no § 1985(3) conspiracy.[24]  Thus, Plaintiff's § 1985 conspiracy claim should be dismissed.

5. **Civil RICO Claim under 18 U.S.C. § 1964(c)**.  The civil RICO provision permits "'[a]ny person injured in his business or property by reason of a violation' of RICO's criminal provisions to recover treble damages and attorney's fees." *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 183, 117 S.Ct. 1984, 1987, 138 L.Ed.2d 373 (1997), quoting 18 U.S.C. § 1964(c).

> To state a claim under RICO, 18 U.S.C. § 1962(c), plaintiffs must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.,* 465

---

[24]   As well, to the extent Plaintiff also alleges a § 1983 conspiracy (*see* Doc. 1, at ¶¶ 130-32), this claim too fails for the same reason; in other words, there has been no showing/allegation in the Complaint of the requisite "understanding" between Bridgecrest (or DriveTime) and the Dallas County DMV office necessary to establish liability on a § 1983 conspiracy claim, much less any averments regarding an understanding that resulted in the ***actual denia****l* of an underlying constitutional right. *Compare, e.g., Grider v. City of Auburn, Alabama,* 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. . . . 'The plaintiff attempting to prove such a conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.' . . . A plaintiff claiming a § 1983 conspiracy must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights.") *with Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990) ("'The plaintiff attempting to prove [a 42 U.S.C. § 1983] conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights . . . [and] prove an actionable wrong to support the conspiracy.'"), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).

F.3d 1277, 1282 (11th Cir. 2006). Additionally, plaintiffs bringing a civil RICO action for damages must show (1) that an injury occurred to business or property and (2) "that such injury was 'by reason of' the substantive RICO violation." 18 U.S.C. § 1964(c); *Williams,* 465 F.3d at 1283. The "by reason of" standard requires that the defendant's misconduct directly and proximately cause the plaintiff's injury. *Id.* at 1287. When evaluating proximate cause in a RICO case, a court must ask "whether the alleged violation led directly to the plaintiff's injuries." *Id.* (quoting *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461, 126 S.Ct. 1991, 1998, 164 L.Ed.2d 720 (2006)).

To establish a pattern of racketeering activity, a plaintiff must allege that a defendant committed at least two predicate racketeering acts that demonstrate criminal conduct of a continuing nature. *See Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1264 (11th Cir. 2004). Racketeering conduct includes any acts that are indictable under 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud). *See* 18 U.S.C. § 1961(1); *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 647-48, 128 S.Ct. 2131, 2138, 170 L.Ed.2d 1012 (2008). "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n,* 605 F.3d at 1290 (quoting *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir. 1991)). Fraud requires misrepresentation or concealment of a material fact; mere puffery or sales talk is insufficient to sustain an allegation of mail or wire fraud. *See United States v. Rodriguez,* 732 F.3d 1299, 1303 (11th Cir. 2013).

In this Circuit, when a RICO claim is premised on predicate acts of mail or wire fraud, the complaint must also satisfy the heightened pleading standard of Rule 9(b), Federal Rules of Civil Procedure. *Am. Dental Ass'n,* 605 F.3d at 1291. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To satisfy Rule 9(b), RICP plaintiffs "must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud,'" and must do so with respect to each defendant's participation in the fraud. *Am. Dental Ass'n,* 605 F.3d at 1291 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

*Lawrie v. Ginn Development Co., LLC,* 656 Fed.Appx. 464, 467-68 (11th Cir. July 28, 2016).

In the factual portion of the Complaint directed to DriveTime and Bridgecrest, Moore merely avers that on May 1, 2017, he went online at DriveTime.com and, after answering a few question, he was approved by DriveTime to purchase a used vehicle (Doc. 1, at ¶ 67) and in the argument portion of his Complaint directed to these two Defendants he merely poses the following question: "Did the DriveTime Automotive Group commit wire fraud by their many online[] and television[] advertisements [], claiming that anyone can qualify for a auto loan from them. And at the same time exploiting peoples no credit history[] as bad credit[] in order to s[e]l[l] them a used car[] with an outlandish and extremely high interest rate." (Doc. 1, ¶ 126). This is the sum and substance of Plaintiff's purported RICO allegations and they make clear that the sole racketeering act Moore complains of in his complaint is DriveTime's online and television advertisements/statements that "anyone can qualify for a auto loan[.]" (*See id.*)[25] Based on this starting point, the undersigned need agree with the Defendants that this allegation, standing alone, does not constitute a misrepresentation of a material

---

[25]    To the extent Plaintiff attempts to add allegations of wire fraud in his response in opposition to the motion to dismiss (*see* Doc. 19, at 11), it should suffice to note that these newly-alleged instances of wire fraud cannot be considered by the Court in ruling on the motion to dismiss filed by DriveTime and Bridgecrest as they are absent from Plaintiff's complaint. *Compare, e.g., Huls v. Llabona,* 437 Fed.Appx. 830, 832 n.5 (11th Cir. Aug. 15, 2011) (holding that an argument raised for the first time in response to a defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and could not be considered on appeal), *cert. denied,* 565 U.S. 1203, 132 S.Ct. 1615, 182 L.Ed.2d 174 (2012), and *Wonders v. Crutchfield,* 2013 WL 2453535, *2 n.1 (M.D. Ala. June 4, 2013) (finding that "Plaintiff may not amend his complaint through argument in his responsive brief[.]")    *with Jallali v. Nova Southeastern Univ., Inc.,* 486 Fed.Appx. 765, 767 (11th Cir. Aug. 9, 2012) ("[A] party cannot amend a complaint by attaching documents to a response to a motion to dismiss."), *cert. denied,* 568 U.S. 1250, 133 S.Ct. 1638, 185 L.Ed.2d 618 (2013); *see Varazo v. Keiser Corp.,* 754 Fed.Appx. 918, 919 (11th Cir. Nov. 30, 2018) ("'A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.'").

fact; instead, it falls into the category of mere puffery or sales talk and, therefore, is insufficient to establish wire fraud.[26] Without proof of a material misrepresentation, there can be no scheme to defraud, *see United States v. Hasson,* 333 F.3d 1264, 1270-71 (11th Cir. 2003) ("A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, . . . reasonably calculated to deceive persons of ordinary prudence[.]"), *cert. denied,* 541 U.S. 1056, 124 S.Ct. 2195, 158 L.Ed.2d 755 (2004); therefore, Plaintiff has failed to state a civil RICO claim and this claim is due to be dismissed on this basis alone.

The undersigned also agrees with the Defendants that Moore has not adequately pled wire fraud in accordance with Rule 9(b) of the Federal Rules of Civil Procedure, as he does not set forth in his Complaint: (1) what the precise *misrepresentations* or *suppressions* were; (2) specifically when, where and how the misrepresentations or suppressions were made and who made them; (3) the content and manner in which any statements misled him; and (4) what each Defendant gained by the allegedly fraudulent statements. *See Lawrie, supra,* 656 Fed.Appx. at 468. In addition, Plaintiff's RICO allegations are insufficient under Rule 9(b) because he arguably has lumped together both DriveTime and Bridgecrest in his allegations of fraud (*see* Doc. 1, at ¶¶ 125-26), when what he is required to do is make "specific allegations with respect to each defendant[.]" *Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1317 (11th Cir. 2007); *see also Transatlantic, LLC v. Humana, Inc.,* 666 Fed.Appx. 788, 789

---

[26]    And, of course, in Mr. Moore's case this statement was true because he certainly qualified for an auto loan.

(11th Cir. Nov. 10, 2016) ("[W]hen the alleged fraud involves multiple defendants, Rule 9(b) requires that the plaintiff plead sufficient facts to 'inform each defendant of the nature of [its] alleged participation in the fraud.'").[27] Absent the required specificity that Rule 9(b) demands, Plaintiff's RICO claim should be dismissed.

      **6.**    **Breach of Contract.**    Plaintiff makes a conclusory reference to breach of contract in the context of his RICO arguments at three junctures in his Complaint (*compare* Doc. 1, at IX-X (questioning whether "selling customers products and services, stated in the contract, that they did not intend[] to deliver on[]" is actionable under the civil RICO statute, 18 U.S.C. § 1964) *with id.* at ¶ 99 (same as just delineated) and *id.* at ¶ 126 (after questioning whether DriveTime committed wire fraud, plaintiff concludes this paragraph with the following language: "And also due to a total breach of contract, and of the items solded (sic) in the contract.")). After Paragraph 126, which is in the "Argument" section of Plaintiff's shotgun complaint, Plaintiff makes no further mention of breach of contract nor does he specifically identify what provision(s) of a contract DriveTime and/or Bridgecrest breached (*see id.* at ¶¶ 127-32). To be sure, in the "fact" portion of his complaint, Moore certainly references the retail purchase agreement, the "Simple Interest Retail Installment Contract," and the "SilverRock Gap Coverage," (*see id.* at ¶¶ 75-77), and sets forth in some detail certain problems he experienced with the car after purchase (*see id.* at ¶¶ 81-96); again, however, he nowhere points to a specific provision in any of the foregoing contracts nor does his

---

[27]     If Plaintiff can make no wire fraud allegations against Bridgecrest, Bridgecrest is not a proper defendant to any civil RICO claim he may attempt to pursue.

complaint contain any allegation that either DriveTime or Bridgecrest breached said provision by, for instance, refusing to pay for repair costs (*see id.*). Instead, based on Plaintiff's own allegations, it appears that Moore decided to disabled the car's motion GPS system (and the computer app connected to it), instead of paying a $75.00 diagnostic charge and seeking recovery of any repair costs under the SilverRock Gap Coverage, which cured all problems he was experiencing in starting/cranking the car (*see id.* at ¶¶ 81-90), and never sought any repair costs related to his headlights under the SilverRock Gap Coverage (*see id.* at ¶¶ 90-96).

In this case, in light of the clear evidence that any contract Plaintiff had with DriveTime was formed in Maryland (*see* Doc. 1, at ¶¶ 8, 68 & 84 (establishing that entered into contract for purchase of the 2011 Subaru Legacy in Temple Hill, Maryland)), Maryland law governs. *Compare Benchmark Medical Holdings, Inc. v. Rehab Solutions, LLC,* 307 F.Supp.2d 1249, 1258-59 & 1259 (M.D. Ala. Mar. 5, 2004) ("When a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in which it sits. . . . Thus, this court applies Alabama choice of law provisions, pursuant to which 'a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.'") *with Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.,* 17 So.3d 200, 213 (Ala. 2009) ("Under the principles of *lex loci contractus*, a contract is governed by the law of the jurisdiction within which the contract is made."). The elements of a claim for breach of contract under Maryland law "include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC,* 83 F.Supp.3d 635, 655 (D. Md. 2015), quoting *Kumar*

*v. Dhanda,* 198 Md.App. 337, 17 A.3d 744, 749 (Md.Ct.Spec.App. 2011). "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Polek v. J.P. Morgan Chase Bank, N.A.,* 424 Md. 333, 362, 36 A.3d 399, 416 (Md. 2012), quoting *Continental Masonry Co. v. Verdel Constr. Co.,* 279 Md. 476, 480, 369 A.2d 566, 569 (1977).

As the above discussion of the contents of Plaintiff's complaint reflects, Moore has not alleged with certainty and definiteness any facts showing a contractual obligation owed by either DriveTime or Bridgecrest to him and a breach of that obligation by either DriveTime or Bridgecrest. Indeed, Plaintiff's complaint is wholly bereft of any citation to any specific contractual provision outlining any obligation owed by either DriveTime or Bridgecrest to him and certainly no facts establishing that Moore requested of either defendant that it (or they) comply with its/their obligation under a specific contract and that either or both defendants refused to comply with that obligation (thereby breaching the contract).[28]  Thus, Plaintiff has not pled a breach of

---

[28]     Given the general and conclusory allegations of Plaintiff's complaint and failure to point out any specific contractual provisions, the undersigned finds no need to consider the specifics of the various documents the Defendants have attached to their motion to dismiss and discussed in their motion to dismiss. (*See* Doc. 7, at 14-15 & Exhibits B-E).

any contract under Maryland law and this claim (to the extent it was intended to be a claim)[29] should be dismissed.[30]

## CONCLUSION

It is **RECOMMENDED** that the Defendants' motions to dismiss Plaintiff's complaint (*see* Docs. 7, 17 & 24) be **GRANTED**. Based on the discussion above, the undersigned **RECOMMENDS** the following: (1) the **dismissal, with prejudice**, of any and all claims Plaintiff purports to assert against the Dallas County Commission and Chair Kim Ballard; (2) the **dismissal, with prejudice**, of Plaintiff's § 1983 claim asserted against Alabama Attorney General Steve Marshall and the ALEA as that claim is barred under the Eleventh Amendment; (3) the **dismissal, with prejudice**, of Plaintiff's § 12101 claim against Steve Marshall because the complaint contains no factual allegations against Marshall and there can be no relevant factual allegations stated against Marshall because the ALEA is responsible for issuing drivers' licenses in Alabama; (4) the **dismissal** of Plaintiff's § 12101 claim against the ALEA because Plaintiff's complaint does not allege facts establishing he suffers from a disability as

---

[29] In Plaintiff's response in opposition (Doc. 19), he makes no argument that he has, in fact, stated a breach of contract claim under Maryland law (*see id.*) and, indeed, given his clear statement that "[t]he tort in this case has taken many form[s]" (*id.* at 16), it appears to the undersigned that Plaintiff never intended to pursue a breach of contract claim under Maryland law against DriveTime and/or Bridgecrest.

[30] The undersigned pretermits any discussion of these movants' alternative motion to compel arbitration (*see* Doc. 7, at 16-22) in light of the recommended determinations that this Court cannot exercise personal jurisdiction over Raymond Fidel (and, alternatively, any and all claims against him should be dismissed with prejudice because Moore's complaint contains no factual allegations against Fidel) and because Plaintiff has not stated a claim for relief against DriveTime and/or Bridgecrest.

defined by the ADA;[31] (5) the **dismissal** of any and all claims purportedly stated against

Raymond C. Fidel because this Court lacks personal jurisdiction over this Defendant;[32]

(6) the **dismissal** of the 15 U.S.C. § 1691 claim asserted against DriveTime and/or

Bridgecrest; (7) the **dismissal, with prejudice,** of Plaintiff's 42 U.S.C. § 1981, 1983 and

1985(3) claims against DriveTime and/or Bridgecrest; (8) the **dismissal** of Plaintiff's civil

RICO claim, *see* 18 U.S.C. § 1964(c); and (9) the **dismissal, with prejudice,** of any

purported breach of contract claim against DriveTime and/or Bridgecrest.[33]  Additionally,

it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**

as a shotgun pleading, except with respect to the prejudicial dismissals identified above,

and that Plaintiff be allowed a period of time (e.g., 30 days following final disposition of

the pending motions to dismiss) to file an amended complaint to include therein any

viable claims he may have against the remaining defendants.[34]

---

[31]    To the extent the Court should, on review, find that Plaintiff cannot assert such facts (as the undersigned believes), this claim should be dismissed with prejudice.

[32]    Even if this Court could exercise personal jurisdiction over Fidel, Plaintiff's claims still would be due to be dismissed, with prejudice, because Plaintiff's Complaint sets forth no factual allegations against Fidel and, therefore, obviously contains insufficient factual matter to allow this Court to draw the reasonable inference that Fidel is liable for any misconduct alleged.

[33]    In truth, Plaintiff's complaint cannot be read to assert a breach of contract claim and since Moore makes no mention of such a claim in opposition to these Defendants' motion to dismiss (*see* Doc. 19) it is all too clear that he did not intend to assert such a claim.

[34]    If for no other reason, Mr. Moore should be allowed the opportunity, in a properly-pled amended complaint, to state a claim for relief against the Dallas County DMV—except, of course, he cannot assert a § 1985(3) or § 1983 conspiracy claim against that entity because there are no factual allegations he can aver to establish an "agreement" between the DMV and Bridgecrest—and specifically serve the amended complaint on the Dallas County DMV.

The undersigned would note, as an aside, that the only "remaining defendants" would be the ALEA (assuming the Court does not dismiss Plaintiff's § 12101 claim with prejudice),

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 24th day of January, 2020.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

---

DriveTime, and Bridgecrest (assuming, again, that the Court on its review does not find that all claims asserted against these two defendants should be dismissed with prejudice).